Hand-Delivered

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

FILED
CHARLOTTE, NC
DEC 19 2024
US DISTRICT COURT
WESTERN DISTRICT OF NC

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

_____ Division

| | |
|---|---|
| Benjamin B. Bowman<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br><br>-v-<br><br>Summit Coffee<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 3:24-cv-1103-GCM<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☑ Yes ☐ No |

## COMPLAINT FOR A CIVIL CASE

**I.     The Parties to This Complaint**

    **A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Benjamin B. Bowman, MBA, MSJ |
| Street Address | PO Box 184 |
| City and County | Paw Creek, Mecklenburg |
| State and Zip Code | NC 28130 |
| Telephone Number | |
| E-mail Address | benclt820@gmail.com |

    **B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

Name: Summit Coffee, Brian Helfrich
Job or Title (if known): CEO
Street Address: 215 South Main St #206
City and County: Davidson; Mecklenbury
State and Zip Code: North Carolina 28036
Telephone Number: 704-895-9090
E-mail Address (if known): Brian@summitcoffee.com

Defendant No. 2

Name:
Job or Title (if known):
Street Address:
City and County:
State and Zip Code:
Telephone Number:
E-mail Address (if known):

Defendant No. 3

Name:
Job or Title (if known):
Street Address:
City and County:
State and Zip Code:
Telephone Number:
E-mail Address (if known):

Defendant No. 4

Name:
Job or Title (if known):
Street Address:
City and County:
State and Zip Code:
Telephone Number:
E-mail Address (if known):

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question      [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Americans with Disabilities Act (ADA), Title III (42 U.S.C. §§ 12181–12189) Civil Rights Act of 1866 (42 U.S.C. § 1981) 28 C.F.R. § 36.302(c) (ADA Implementing Regulations)
United States Constitution, Fourteenth Amendment, Equal Protection Clause

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

    and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

  b.  If the defendant is a corporation

The defendant, *(name)* Summit Coffee, is incorporated under the laws of the State of *(name)* North Carolina, and has its principal place of business in the State of *(name)* North Carolina.
Or is incorporated under the laws of *(foreign nation)* _____,
and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1. Incident and Denial of Access – September 11, 2024
On September 11, 2024, I, Benjamin B. Bowman, visited Summit Coffee with my trained service animal. Summit Coffee's staff refused me public access by demanding ADA documentation, a tag, etc. that is neither legally required nor permissible under federal law. When I clarified that my service animal met all ADA requirements, I was denied access and asked to leave.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Actual Damages: The plaintiff claims $2,500,000 in compensatory damages for emotional distress, public humiliation, and exacerbation of pre-existing health conditions, including anxiety, depression, and pre-diabetes, per NIH and Univ. of Michigan's published findings. This amount is based on cumulative causal results, illustrated by: Documented increases in medical treatment and prescription dosages (Lexapro, Trazodone). A pre-diabetes diagnosis linked by medical professionals to stress caused by the incident. The severe emotional impact of being denied access, humiliated publicly, and subjected to discriminatory treatment based on disability and race.

Punitive Damages: $2,500,000 for reckless disregard of Plaintiff's rights and amplified harm. Injunctive Relief: Mandatory ADA training for staff and visible signage clarifying ADA policies. Attorney's Fees and Costs: As allowed by law.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/19/24

Signature of Plaintiff: [signature]
Printed Name of Plaintiff: Benjamin B. Bowman, MBA, MSJ

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**

**Benjamin B. Bowman**
*Plaintiff,*

v.

**Summit Coffee Co.**
*Defendant.*

**COMPLAINT**
**JURY TRIAL DEMANDED**

**INTRODUCTION**

1. This is a civil action brought by Plaintiff, Benjamin B. Bowman, against Defendant, Summit Coffee Co., for non-compliance with federal and state laws governing public accommodations, including failures related to the intersectionality of both disability and race. Plaintiff seeks compensatory and punitive damages for the harms caused by Defendant's non-compliance with federally protected rights, public humiliation and reckless disregard for legal obligations.

2. Defendant's actions violated the Americans with Disabilities Act (ADA), Title III, and 42 U.S.C. § 1981 by denying Plaintiff access, subjecting him to improper scrutiny, and treating him disparately based on the intersectionality of race and disability.

3. Defendant's conduct caused significant emotional distress and exacerbated Plaintiff's pre-existing health conditions, cumulatively leading to increased medical treatment and severe mental and physical impacts.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 28 U.S.C. § 1331, as the claims arise under the Americans with Disabilities Act (ADA), Title III and 42 U.S.C. § 1981.

5. Venue is proper in this District under **28 U.S.C. § 1391(b)**, as the events giving rise to the claims occurred within this District, and Defendant operates significant business within its North Carolina jurisdiction.

1

**PARTIES**

6. Plaintiff, Benjamin B. Bowman, is a resident of Charlotte, North Carolina and is an African American male with a documented intellectual disability and other documented disabilities.

7. Defendant Summit Coffee Co. is a North Carolina-based café that was established in 1998, according to its website. Summit Coffee operates more than 10 coffee shops, including the location where the incident occurred.

**FACTUAL ALLEGATIONS**

8. On September 11, 2024, Plaintiff entered Defendant's premises with his service animal under the reasonable expectation, based on Defendant's representations and implied obligations, that Defendant was knowledgeable about and in compliance with the Americans with Disabilities Act (ADA). Defendant's subsequent actions or inactions created a deceptive or unfair barrier to the Plaintiff's access and use of the premises, contrary to the rights afforded under the ADA.

9. Defendant's staff, improperly stated, *"We require marked service animals,"* and added, *"That has to have a dog tag or some sort of vest that says Service Animal Certified,"* stipulations that failed to comply with federal regulations.

10. Plaintiff stated that under the ADA, service animals are not required to wear vests or carry tags, to which the manager responded, *"That's just a part of our rules here."* Defendant's policies reasonably create confusion about federal accessibility requirements by requiring service animals to be marked with vests or documentation, contrary to ADA standards. These actions presented barriers to access and misled patrons about their rights.

11. Plaintiff emphasized the seriousness of the matter, stating, *"This is a violation of my civil rights,"* while the manager replied dismissively, *"I understand where you're coming from."* Defendant did not provide adequate training to its staff regarding ADA requirements, leading to the improper denial of access and unnecessary scrutiny of service animals. This failure misled Plaintiff and other patrons with disabilities into believing Defendant adhered to federal accessibility laws.

12. When Plaintiff attempted to show the manager the relevant legal provisions, she refused, saying, *"No, I wouldn't at the moment."*

2

13. Despite Plaintiff's clear explanation of federal law, video captures the manager laughing and smirking throughout the conversation, responding sarcastically, **"Oh, my gosh, I can't believe I have to deal with this right now; I'm talking to a black man,"** within the context of depriving Plaintiff with full and lawful access to a public facility.

14. Plaintiff attempted to gain clarity on the manager's statements and provide ADA FAQs on Plaintiff's cellphone, *"I don't know why you're bringing up my race; I have proof that what you're saying is illegal,"* but the manager declined to review it, stating, *"I'll do my research after you leave,"* as captured on video.

15. When Plaintiff requested clarity, the manager added, *"Well, there's a huge sign posted on our front door, and you're recording me right now, which is also violating my rights,"* as captured on video. Defendant's reliance on improper service animal policies, including signage requiring documentation or identification not permitted under the ADA is deceitful as their policies misled patrons with disabilities, creating barriers to access and undermining public trust.

16. The interaction escalated, with Plaintiff stating, *"You're kicking me out because I have a disability?"* The manager responded defensively, *"I'm not kicking you out because you have a disability,"* as captured on video.

17. The manager further stated, *"I'm asking you to leave because we have a place where we serve food and beverages, and we cannot have animals in here unless they are marked as service animals,"* as captured on video.

18. Plaintiff repeatedly cited the law, noting, *"I know what the ADA says, and you're violating it,"* to which the manager sarcastically replied, *"Okay, well, I wouldn't mind you leaving,"* as captured on video.

19. Throughout the interaction, the manager made disparaging remarks and continued laughing and smirking, creating a hostile and humiliating environment for Plaintiff, as captured on video.

20. At one point, the video captures the manager stating, *"Clearly you came in with something else on your mind,"* a comment that Plaintiff interpreted as a reference to his disability.

21. Plaintiff informed the manager, *"I came in here with the intention to get work done, and my civil rights are being violated,"* as captured on video.

22. The manager responded, *"I'll even bring your dog some water to go outside,"* further emphasizing her refusal to allow Plaintiff to remain in the establishment.

3

23. Following this incident, Plaintiff provided the Defendant's with **Video**, documenting the interaction and shared the ADA FAQs with Summit Coffee's leadership to inform them of noncompliance and seek resolution.

24. On September 13, 2024, Defendant's operating manager, Sarah Woods, and Brett Dioguardi, **Defendant's Chief Operating Officer, issued a joint statement, admitted to a lack of awareness of ADA rules** regarding service animals, stating that they were *"not aware of the ADA rules regarding asking about service animals, and I don't think our manager of that café was either."* This statement acknowledges systemic failures in training and reflects Defendant's negligence in ensuring staff compliance with federal disability laws. Despite this admission, Defendant failed to take appropriate corrective actions to address the harm caused by the incident.

25. Defendant's (admitted) failure to train its staff on ADA compliance demonstrates systemic negligence and an unfair and deceptive business practice. Defendant misrepresented its commitment to accessibility through public statements, while internally failing to equip staff with the knowledge required to comply with federal accessibility laws—despite being in business since 1998.

26. On September 16, 2024, Plaintiff informed Defendant of the staff's inappropriate comments regarding Plaintiff's race, the public humiliation Plaintiff experienced, and the cumulative impact of Defendant's actions on Plaintiff's pre-existing mental health conditions. Plaintiff stated, *"I'd like to resolve this matter amicably and avoid further escalation, but the seriousness of this incident should not be understated."*

27. Defendant remained silent for 47 days—between September 13, 2024 until October 29, 2024.

28. On October 23, 2024, Plaintiff recorded **Video**, documenting his re-entry into Summit Coffee with a service animal. The video demonstrates heightened scrutiny and dismissive behavior directed toward Plaintiff, in stark contrast to the treatment shown in **Video**, where a white woman entered the same establishment with a service animal and was not questioned or scrutinized. This evidence highlights Defendant's non-compliance with ADA Title III and Title II of the Civil Rights Act, reflecting a pattern of disparate treatment based on Plaintiff's protected statuses under federal law.

    **Defendant's executive leadership failed to respond to or address the evidence presented, further demonstrating systemic non-compliance** and a lack of corrective action. This inaction compounded the harm caused to Plaintiff, including emotional distress and exacerbation of pre-existing mental health conditions.

29. On October 28, 2024, approximately 48 days after **Incident #1**, Plaintiff emailed **Demand Letter #1** to Defendant's Chief Operating Officer, Mr. Brett Dioguardi and Defendant's Operations Manager, Ms. Sarah Woods. The letter detailed the improper denial of access, discriminatory treatment, and the ongoing harm caused by Defendant's actions, requesting corrective measures and good faith engagement to resolve the matter amicably. **Plaintiff included pictures, video, quotes a flexible timeline for resolution.** Despite this outreach, Defendant's executive leadership failed to engage in any meaningful way. This lack of communication demonstrates:

    a. **Failure to Engage in Good Faith Negotiations**: Ignoring Plaintiff's efforts to resolve the issue without litigation.

    b. **Non-Compliance with ADA**: Ongoing violations due to the business's failure to provide immediate and equal access to individuals with disabilities.

    c. **Negligence**: Failing to remedy the harm caused or mitigate Plaintiff's emotional distress.

    d. **Retaliatory Behavior**: Indifference to Plaintiff's protected rights, further compounding the harm.

    Defendant's inaction underscores systemic non-compliance, negligence and bad faith, exacerbating Plaintiff's emotional distress and financial harm.

30. On October 29, 2024, Defendant's CEO, Brian Helfrich, responded via email, stating: *"Allow me also to extend my apologies for your experience at Summit's On The Plaza cafe location. Making a guest feel this way is the antithesis of our intent."* While this apology acknowledges harm to Plaintiff, it does not address the immediate and ongoing impact of the incident. Defendant failed to take meaningful steps to remedy the situation, provide timely resolution, or mitigate Plaintiff's emotional distress. This delayed and insufficient response highlights ADA non-compliance and Defendant's failure to ensure accessibility and equal treatment under the law.

31. On October 30, 2024, Plaintiff followed up with Defendant's CEO, Brian Helfrich, emphasizing the prolonged delay in addressing the incident. *"Thank you for acknowledging receipt of my demand letter. I understand and appreciate the need for thorough review given the gravity of the matter. However, **it's now been 50 days since I initially reached out and included a short video of the incident along with relevant ADA FAQs**.... While I understand that legal counsel is involved, I would ask that Summit Coffee provide a clear response or a specific update on your findings by Friday, November 8, 2024. **This will ensure clarity, prevent any further delays in***

5

> *addressing this important matter and level-setting appropriate expectations and accountability."*

32. On November 22, 2024, 73 days after the initial incident, Plaintiff emailed Defendant, reiterating the significant delays, systemic failures and bad faith actions. **After lowering amount requested in demand letter #2, Plaintiff reset damages to the amount stated in the initial demand letter**. Plaintiff outlined the contents of **Video #1**, **Video #2**, and **Video #3**, which collectively highlight Defendant's **Title II and ADA non-compliance**. Despite this comprehensive response and the strength of evidence provided, Defendant failed to reply or take corrective action. This ongoing inaction demonstrates **ADA non-compliance, intersectional non-compliance with ADA and Title II**, and a pattern of **systemic failures**. Defendant failed to counteroffer or engage in any meaningful way, despite admitting systemic failures and federal non-compliance. Defendant's delays, indifference to the harm caused and failure to engage in good faith exacerbated Plaintiff's emotional distress and reflected reckless disregard for mitigating risks associated with these violations.

33. Defendant's misrepresentation of its accessibility policies and practices cumulatively caused Plaintiff significant emotional distress, particularly as an individual with intellectual disabilities. The emotional distress arising from these deceptive practices aligns with the broader harm caused by Defendant's actions.

34. Defendant's actions included denying Plaintiff access to public accommodations, imposing improper documentation requirements for a service animal, and treating Plaintiff differently compared to other patrons. These practices created confusion and harm for Plaintiff while undermining Defendant's stated commitment to inclusivity and accessibility. Defendant's failure to align its practices with public expectations and its own representations caused Plaintiff significant emotional and financial harm. This conduct also highlights a lack of accountability in addressing concerns raised by Plaintiff, further compounding the harm caused.

35. **Over 100 days have passed since the initial incident, during which Defendant has failed to provide meaningful redress or comply with its legal responsibilities under the ADA and Title II of the Civil Rights Act**. Despite publicly promoting ideals of inclusivity, accountability, and equality, Defendant's private actions and systemic failures demonstrate a clear disregard for those principles. Defendant's refusal to take corrective action, even after receiving clear evidence of harm and non-compliance with federal accessibility laws, has left Plaintiff no alternative but to seek relief through the judicial system. This suit is not brought lightly but is a necessary response to Defendant's repeated failures to meet its legal obligations—obligations designed to ensure equal access and fairness for all. Plaintiff now seeks the Court's intervention to secure the justice and accountability that Defendant has refused to provide.

## CLAIMS FOR RELIEF

### Count I: ADA Non-Compliance with Amplified Harm

36. Plaintiff incorporates by reference all preceding paragraphs.

37. Defendant violated **ADA Title III** by denying Plaintiff access, imposing improper documentation requirements and failing to accommodate his service animal.

38. Failure to engage in the interactive process.

### Count II: Violation of 42 U.S.C. § 1981 (Race Discrimination)

39. Plaintiff incorporates by reference all preceding paragraphs.

40. Defendant treated Plaintiff differently based on race, as demonstrated by the disparate treatment of white patrons compared to Plaintiff.

### Count III: Negligence with Amplified Harm

41. Plaintiff incorporates by reference all preceding paragraphs.

42. Defendant failed to properly train its staff on ADA compliance, resulting in harm to Plaintiff.

### Count IV: Intentional Infliction of Emotional Distress (IIED)

43. Plaintiff incorporates by reference all preceding paragraphs.

44. Defendant's conduct was extreme and outrageous, causing Plaintiff severe emotional distress.

### Count V: Violation of N.C. Gen. Stat. § 75-1.1 (UDTPA)

45. Defendant's actions violated **N.C. Gen. Stat. § 75-1.1**, constituting unfair and deceptive trade practices that harmed Plaintiff.

7

**RELIEF REQUESTED**

Plaintiff requests the following relief:

1. **Compensatory Damages**: $2,500,000 for emotional distress and health impacts.
2. **Punitive Damages**: $2,500,000 for reckless disregard of Plaintiff's rights and amplified harm.
3. **Injunctive Relief**: Mandatory ADA training for staff and visible signage clarifying ADA policies.
4. **Attorney's Fees and Costs**: As allowed by law.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

*[signature]*

Benjamin B. Bowman

8

# Timeline Between Plaintiff and Defendant

| Date | Event/Action | Summitt Coffee's Response | Rule |
|---|---|---|---|
| 9/11/24 | **Incident #1:**<br><br>Summit Coffee employee improperly demands service animal documentation and denies access. Summit Coffee received **Video #1** and ADA FAQs | | ADA Title III; Public Accommodation Rules |
| 9/13/24 | Summit Coffee's senior & executive leadership email joint statement:<br><br>*"I was not aware of the ADA rules regarding asking about service animals and I don't think our manager of that café was either."* | Acknowledgment of ADA training failure and liability. | Admission of Liability; Evidence of Negligence |
| 9/16/24 | **Plaintiff's good faith effort:** Plaintiff informed defendant of staff's inappropriate comments regarding plaintiff's race, public humiliation and defendant's cumulative impact of plaintiff's pre-existing mental health conditions. *"I'd like to resolve this matter amicably and avoid further escalation but the seriousness of this incident should not be understated,"* Plaintiff said. | No response from Summit Coffee's senior and executive leadership. | Intersectional Harm: Non-Compliance: ADA and Title II, Emotional Harm, Public Humiliation, Insufficient Training |
| 9/13/24- 10-29-24 | - | Defendant failed to respond meaningfully | Evidence of Bad Faith |
| 10/23/24 | **Video #2:** White woman enters Summit Coffee with a service animal without being questioned. | No response or communication from Summit Coffee leadership. | Disparate Treatment; Non-Compliance: Title II & ADA Rules |
| 10/23/24 | **Video #3:** Plaintiff enters Summit Coffee with a service animal and faces added scrutiny | Video shows distinct racial and disability-based discriminatory treatment compared to **Video #2**. | Non-Compliance: Title II & ADA; Disparate Treatment |

| Date | Plaintiff Action | Defendant Response | Violations/Claims |
|---|---|---|---|
| 10/28/24 | Plaintiff emails Defendant Demand Letter #1, **48 days after Incident #1** | No response or communication from Summit Coffee leadership. | **Failure to Engage in Good Faith Negotiations; Non-Compliance: ADA** (ongoing violation; businesses must provide immediate and equal access to individuals with disabilities. Lack of Corrective Action; Systemic Non-Compliance; **Negligence: Failure to Remedy, Emotional Distress, Retaliatory Behavior; Failure to Mitigate Damages;** |
| 10/29/24 | | Defendant's CEO email: *"Allow me also to extend my apologies for your experience at Summit's On The Plaza cafe location. Making a guest feel this way is the antithesis of our intent."* | **Admission of Harm; ADA Non-Compliance: Delay in Resolution; Failure to Address Immediate, Emotional Distress** |
| 10/30/24 | Plaintiff follows up, pointing out 50+ days of delay and reiterating the need for a response by Nov. 8, 2024. | | **Non-Compliance: ADA; Prolonged Delay in Addressing Claim; Failure to Engage in Good Faith; Emotional Distress; Lack of Accountability and Transparency** |

2

| Date | Plaintiff Action | Defendant Response | Classification |
|---|---|---|---|
| 11/11/24 | Plaintiff raises concerns with Brian Helfrich, pointing out that leadership failed to engage meaningfully. | No response from Brian Helfrich. No attempt to counteroffer or engage in settlement discussions. | **Bad Faith** |
| 11/21/24 | | Summit Coffee's attorney formally rejects Plaintiff's settlement demand. Fails to counteroffer. | **Legal Strategy; Rejection without Good Faith** |
| 11/22/24 | Plaintiff requested Summit Coffee's financial information (ratios, bank statements, cash flow) to clarify financial claims. | Summit Coffee via its attorney refused to provide any financial information, reiterating the rejection of your settlement demand. | **Bad Faith Negotiations; Failure to Engage in Constructive Dialogue; Stonewalling; Lack of Transparency;** |
| 11/22/24 | Plaintiff responded reiterating Summit Coffee's delays, bad faith actions, systemic failures, and strength of evidence. Reset damages to initial Demand. Plaintiff reveales contents within **Video #1, Video #2 and Video #3**, which highlight Title II and ADA Non-Compliance. | No response. | Ongoing ADA Non-Compliance; Intersectional Non-Compliance: ADA & Title II Settlement Demand; Strategic Delay; Systemic Non-Compliance; Emotional Harm; Reckless Disregard; Failure to Mitigate Risks |

# Summit Coffee: Public Commitments vs. Private Actions

| Public Statements/Commitments | Private Actions/Behaviors |
|---|---|
| **We're committed to fostering inclusivity and ensuring equal treatment for all.** *(Public statement from Brian Helfrich, CEO Summit Coffee)* | Denied equal treatment to a Black man with disabilities while failing to scrutinize a white woman under identical circumstances. |
| **We believe in accountability and integrity in all our actions.** *(Summit Coffee's Values Statement, Brian Helfrich, CEO)* | Summit Coffee admits in internal emails that they failed to train staff on ADA compliance but refused to take corrective measures. |
| **We stand against racial bias and systemic discrimination.** *(Social media post, June 1, 2020)* | The manager's comment: "I can't believe I have to deal with this. I'm talking to a Black man" reflects racial bias in decision-making. |
| **We're constantly improving our policies and practices to better serve our community.** *(Summit Coffee website)* | Prolonged delays (73+ days), stonewalling requests, and rejecting settlement talks show no genuine effort to improve policies. |
| **Our team members are trained to provide excellent customer service while adhering to all applicable laws.** | Summit Coffee's legal team admitted gaps in training and ADA compliance, demonstrating a systemic failure. |
| **We stand by our values and are responsive to our customers' concerns."** | Multiple documented attempts to engage Summit Coffee leadership were ignored or dismissed. |

4